1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DIANA J. HILTON,

11          Plaintiff,                    No. CIV S-08-2495 DAD

12      v.

13   MICHAEL J. ASTRUE,                   ORDER
     Commissioner of Social Security,
14
            Defendant.
15   _____/

16          This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment.[1]  For the reasons explained below, plaintiff's

18   motion is granted, the decision of the Commissioner of Social Security (Commissioner) is

19   reversed, and this matter is remanded for further proceedings consistent with this order.

20                          **PROCEDURAL BACKGROUND**

21          On September 30, 2004, plaintiff applied for Supplemental Security Income (SSI)

22   under Title XVI of the Social Security Act (Act), alleging disability beginning on February 1,

23   2004, based on interstitial cystitis-bladder, depression, panic attacks, and post-traumatic stress

24   disorder (PTSD).  (Transcript (Tr.) at 38, 46, 54-57.)  The application was denied initially on

25   _____

26          [1] Defendant did not file a cross-motion for summary judgment.

                                    1

January 6, 2005, and upon reconsideration on March 21, 2005. (Tr. at 38-50.) Pursuant to plaintiff's timely request, a hearing was held before an administrative law judge (ALJ) on May 11, 2006. (Tr. at 51-52, 488-530.) Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert. (Tr. at 488-89.) In a decision issued on September 19, 2006, the ALJ determined that plaintiff had not been under a disability since September 30, 2004, the date her application was filed. (Tr. at 14-24.) The ALJ entered the following findings:

1.  The claimant has not engaged in substantial gainful activity since February 1, 2004, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).

2.  The claimant has the following severe combination of impairments: rectal and bladder prolapse and interstitial cystitis (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, walk/stand six hours, sit six hours, and jobs with access to a bathroom (these limitations are supported by her rectal and bladder prolapse and interstitial cystitis), and she has no postural, manipulative, visual, communicative, mental, or environmental limitations.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on July 28, 1966 and was 38 years old on the date the application was filed, which is defined as a younger individual age 18-44 (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy

/////

1    that the claimant can perform (20 CFR 416.960(c) and
     416.966).

2

3    10.    The claimant has not been under a "disability," as defined
            in the Social Security Act, since September 20, 2004 (20
            CFR 416.920(g)), the date the application was filed.

4

5    (Tr. at 16-24.)  On August 21, 2008, the Appeals Council denied plaintiff's request for review of

6    the ALJ's decision.  (Tr. at 6-10.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g)

7    by filing the complaint in this action on October 20, 2008.

8                                    **LEGAL STANDARD**

9              The Commissioner's decision that a claimant is not disabled will be upheld if the

10   findings of fact are supported by substantial evidence and the proper legal standards were

11   applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

12   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of

13   the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller

14   v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as

15   a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599;

16   Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389,

17   401 (1971)).

18             A reviewing court must consider the record as a whole, weighing both the

19   evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760

20   F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

21   of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

22   substantial evidence supports the administrative findings, or if there is conflicting evidence

23   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

24   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

25   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

26   1335, 1338 (9th Cir. 1988).

                                            3

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations.  Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff seeks an order reversing the Commissioner's decision and finding her disabled or, in the alternative, an order of remand for a new hearing.  Plaintiff asserts two principal errors.  First, plaintiff argues that the ALJ failed to properly assess her residual functional capacity (RFC) because he (1) failed at step two of the sequential analysis to credit the functional limitations assessed by plaintiff's treating and examining physicians and to recognize

that she suffers from a severe mental impairment; (2) failed to properly assess the impact of plaintiff's interstitial cystitis; (3) failed to properly credit plaintiff's testimony; and (4) failed to properly credit the third-party statements of plaintiff's husband.  Second, plaintiff argues that the ALJ failed to pose a legally adequate hypothetical to the vocational expert (VE) and failed to credit the testimony of the VE in response to hypotheticals that accurately reflected plaintiff's functional limitations.

The court finds that plaintiff is entitled to summary judgment on her claim that the ALJ erred when he failed to find that she suffered from a severe mental impairment.  The ALJ's findings of fact in this regard are not supported by substantial evidence, and the proper legal standards were not applied.

At step two of the sequential evaluation process, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  Under the Commissioner's regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a).  Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting.  20 C.F.R. § 416.921(b).

"The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153.  "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir.

2005) (quoting Smolen, 80 F.3d at 1290).  See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001).  "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  Webb, 433 F.3d at 686 (quoting Smolen, 80 F.3d at 1290).

Plaintiff cites extensive evidence in the record establishing that she was diagnosed with and treated for anxiety, PTSD, and depression.  Plaintiff alleges that these impairments give rise to or contribute to such symptoms as difficulty maintaining concentration, persistence and pace, an impaired ability to relate to and interact with supervisors, co-workers and the public, and an impaired ability to handle stress, all of which diminish her ability to function on the sustained basis necessary for full-time, continuous employment at any exertional level.

Michael Wollner, M.D., plaintiff's treating physician, completed an Interstitial Cystitis Residual Functional Capacity Questionnaire form on May 18, 2006, in which he indicated, after seeing plaintiff monthly since September 16, 2005, that her symptoms and conditions included anxiety, depression, and a personality disorder.  (Tr. at 480-81.)  In Dr. Wollner's opinion, plaintiff's anxiety and depression, along with her symptoms of urinary frequency, urinary urgency, bladder/pelvic pain, and low back pain, would cause plaintiff to frequently experience symptoms during a typical workday that would be severe enough to interfere with the attention and concentration needed to perform even simple work tasks and would limit her to low stress jobs.  (Id.)  Dr. Wollner described her anxiety disorder as significant and stated that she would need a low-stress environment in order to be productive.  (Tr. at 481.)  Dr. Wollner also opined that plaintiff needed a job that permitted ready access to a restroom, as she would need to take unscheduled restroom breaks two or three times a day for about five minutes per break on one or two minutes notice.  He estimated that she would be absent from work due to her impairments or treatment of them for two days per month.  (Tr. at 482.)

The ALJ discounted Dr. Wollner's opinions on the grounds that the doctor "did not identify any physical functional limitations, and the other treating records did not document

1    that [plaintiff] would require restroom breaks at the frequency he identified, and mental health

2    chart notes do not document that she used the restroom on a frequent basis." (Tr. at 22.) The

3    ALJ completely rejected Dr. Wollner's opinions regarding plaintiff's psychiatric symptoms,

4    stating that he could not "give any weight to Dr. Wollner's assessment of her mental capability as

5    the discussion of her mental complaints . . . does not support that she has significant anxiety, and

6    that her mental complaints were found not credible." (Tr. at 20.)

7            Plaintiff argues, and the court agrees, that the ALJ mischaracterized the record.

8    The treatment notes document that plaintiff suffered from frequent urination. (Tr. at 167, 171,

9    176, 180, 183, 187, 191, 198, 274, 275, 277, 288, 298.) The ALJ conceded that plaintiff suffered

10   from the severe impairment of interstitial cystitis, which is characterized by frequent urination.

11   Plaintiff testified that she needs to use the restroom frequently, is unable to hold her urine, and

12   uses the restroom 20-30 times per day. (Tr. at 509.) Plaintiff's husband submitted a disability

13   report in which he notes that plaintiff's activities and hobbies are limited by her frequent need to

14   use the bathroom. (Tr. at 65.) Shasta County Mental Health Clinic, where plaintiff was treated

15   for anxiety, depression, and panic attacks, included in a treatment plan a goal of working on "use

16   regarding bath room." (Tr. at 470.) Consulting psychiatrist Dr. Roux's evaluation noted

17   plaintiff's burning urge to void (tr. at 219), and the treatment records of all of plaintiff's treating

18   physicians – Drs. Wollner, Budhram, and Niazi – note plaintiff's anxiety and depression along

19   with her physical symptoms, which include frequent urination. On this record, the ALJ's reasons

20   for giving Dr. Wollner's opinions only moderate weight or no weight at all are unpersuasive.

21           The record also contains extensive documentation that plaintiff's anxiety and

22   depression were severe impairments. Records of Shasta County Mental Health Clinic reflect that

23   plaintiff suffered from an anxiety disorder (tr. at 416, 417, 421, 437, 447, 466), panic disorder

24   with agoraphobia (tr. at 423, 428, 430, 435, 444, 449, 450, 453, 455, 458, 462, 465, 470), major

25   depressive disorder severe with psychotic features (tr. at 426), and PTSD (tr. at 426, 473, 474,

26   475). Consultative examiner Dr. Roux diagnosed plaintiff as suffering from panic disorder,

7

anxiety disorder, depressive disorder, and PTSD. (Tr. at 225.) Dr. Wollner, Dr. Roux, and the state agency examiners all determined that plaintiff was limited to performing simple, non-stressful tasks with little contact with others, but the ALJ again discounted those findings on the ground that plaintiff was able to attend her medical appointments, go to the emergency room, and engage in some daily activities. (Tr. at 16.) In fact, the record reflects that plaintiff was not always able to attend her medical appointments. (Tr. at 420, 431, 434, 439.) Her ability to go to the doctor or the emergency room and participate in some daily activities do not support a finding that she can interact with people and perform complex tasks.

The ALJ also discounted all of the doctors' opinions regarding plaintiff's mental impairments in part on the ground that the records reflected improvement in her condition. (Tr. at 17.) As the ALJ conceded, however, Shasta County Mental Health Clinic records documented her ongoing anxiety and a full blown panic attack on May 1, 2006. (Id.)

The ALJ determined that Dr. Budhram's records did not reflect a severe mental impairment because they did not show that the doctor considered plaintiff "disabled." (Tr. at 17.) The ALJ also found that plaintiff's mental health records did not document that she was seen in emergency rooms for mental complaints and that she never sought help from United Way for her mental complaints. (Id.) These grounds for rejecting evidence of plaintiff's severe mental impairments are unpersuasive, as the record does contain evidence reflecting that plaintiff was treated in the emergency room at Mayers Memorial Hospital for a panic attack at least once and for "bipolar depression" on another occasion. (Tr. at 311, 343.) Moreover, there is no requirement that claimants seek help from United Way organizations.

The ALJ's step-two analysis concludes with a discussion of the listings for affective disorders and anxiety-related disorders, and a finding that plaintiff's mental complaints are not credible. (Tr. at 17-18.) The discussion of listing criteria is out of place at step two, as step three of the sequential analysis is the step of the sequential evaluation process at which the ALJ must determine whether the claimant's impairment or combination of impairments meets or

1  medically equals the criteria of any listed impairment.

2    The administrative record before the court provides extensive uncontroverted

3  evidence that plaintiff has mental impairments that significantly limit her mental ability to do

4  basic work activities such as understanding, carrying out and remembering simple instructions,

5  and responding appropriately to supervision, co-workers, and usual work situations.  Even the

6  state agency physicians in this case so found.  (Tr. at 255-57.)  In reaching this conclusion, the

7  undersigned is mindful that the step-two inquiry is but "a de minimis screening device to dispose

8  of groundless claims."  Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).  See also

9  Edlund, 253 F.3d at 1158.  The court cannot find that plaintiff's mental impairments are "not

10  severe" because the evidence of record does not establish that the impairments are merely slight

11  abnormalities having no more than a minimal effect on her ability to work.  Certainly, this is not

12  an instance in which a finding of no mental impairment at step two of the sequential evaluation

13  process was justified by a total absence of objective evidence of a severe impairment or where

14  even a claimant's own doctor was hesitant to conclude that the condition in question was

15  legitimate.  See Webb, 433 F.3d at 688.  Here, the ALJ's determination with respect to plaintiff's

16  mental impairments is not supported by substantial evidence in the record as a whole and must be

17  reversed.

18    "[A]djudication must continue through the sequential evaluation process."  SSR

19  85-28, 1985 WL 56856, at *3.  Remand is therefore required in this case so that the ALJ can

20  proceed beyond step two of the sequential evaluation process with respect to plaintiff's severe

21  mental impairments.  See Webb, 433 F.3d at 688 (remanding for further proceedings where

22  "[t]he ALJ should have continued the sequential analysis beyond step two because there was not

23  substantial evidence to show that Webb's claim was 'groundless'").

24          **CONCLUSION**

25    In light of the remand required by the ALJ's error at step two, the court need not

26  address plaintiff's remaining arguments.  See Sanchez v. Apfel, 85 F. Supp. 2d 986, 993 n.10

1   (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in

2   ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's

3   credibility.").  Moreover, the record is not sufficiently developed for consideration of those

4   arguments at the present time.  Cf. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994)

5   ("Generally, we direct the award of benefits in cases where no useful purpose would be served by

6   further administrative proceedings, or where the record has been thoroughly developed.").

7           On remand, the ALJ shall recognize plaintiff's mental impairments as severe at

8   step two and proceed with the sequential analysis.  The effect of plaintiff's mental impairments

9   shall be carefully considered in conjunction with her physical impairments.  The medical

10  opinions shall be given proper weight, and the subjective testimony of plaintiff and her husband

11  shall be properly credited.  Plaintiff's residual functional capacity shall be reconsidered in light of

12  all of plaintiff's impairments and the entire record.  If the sequential evaluation proceeds to step

13  five, the ALJ shall hold a new hearing at which plaintiff testifies and hypothetical questions are

14  presented to the vocational expert in a manner that properly takes into account all of the

15  limitations on plaintiff's ability to engage in work-related functions.  See Holohan v. Massanari,

16  246 F.3d 1195, 1208-09 (9th Cir. 2001) (explaining that testimony from a vocational expert was

17  necessary because the claimant suffered from a severe mental impairment).

18          Accordingly, IT IS HEREBY ORDERED that:

19          1.  Plaintiff's October 25, 2009 motion for summary judgment (Doc. No. 20) is

20  granted;

21          2.  The decision of the Commissioner of Social Security is reversed; and

22          3.  This case is remanded for further proceedings consistent with this order.

23  DATED: September 24, 2010.

24

25
    DAD:kw
26  Ddad1/orders.socsec/hilton2495.order

                                    DALE A. DROZD
                                    UNITED STATES MAGISTRATE JUDGE

                                    10